UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN PARALYZED VETERANS
OF AMERICA,

and

MOCERI/DM INVESTMENTS, LLC,
a Michigan limited liability company,
JOAN M. BUSER,

     Plaintiffs,

     v.

THE CHARTER TOWNSHIP OF OAKLAND,
a Michigan municipal corporation,

     Defendant.

Lead Case No. 14-14601 and
consolidated with
Case No: 14-14697

Honorable Terrence G. Berg
Magistrate Judge Majzoub

---

| | |
|---|---|
| The Googasian Firm, P.C.<br>George A. Googasian (P14185)<br>Dean M. Googasian (P53995)<br>Attorneys for Plaintiff MPVA<br>6895 Telegraph Road<br>Bloomfield Hills, MI 48301-3138<br>(248) 540-3333<br>Attorneys for the MPVA<br><br>Kickham Hanley PLLC<br>Gregory D. Hanley (P51204)<br>Edward F. Kickham (P23447)<br>Jamie K. Warrow (P61521)<br>32121 Woodward Avenue, Suite 300<br>Royal Oak, Michigan 48073<br>(248) 544-1500<br>Attorneys for Moceri/DM Investments<br>and Joan Buser (the "Moceri Plaintiffs") | Giarmarco, Mullins & Horton, P.C.<br>Daniel J. Kelly (P41315)<br>101 W. Big Beaver Rd., 10th Floor<br>Troy, Michigan 48084<br>(248) 457-7025<br>Attorneys for Defendant |

---

**CONSENT JUDGMENT**

This case having come before this Court on the Complaint filed by Plaintiffs, Michigan Paralyzed Veterans of America ("MPVA"), and Moceri/DM Investments, LLC ("Moceri"), and Joan M. Buser ("Buser") and the responsive pleadings and filings of the Defendant, The Charter Township of Oakland ("Oakland Township" or sometimes referred to herein as the "Township"), and the parties to this case having presented evidence supporting the findings and conclusions set forth in this Consent Judgment and to entry of this Consent Judgment; and the Court being otherwise fully advised in the premises;

Based on the stipulation of the parties, this Court finds and concludes:

A.      This Court has subject matter jurisdiction over the matters raised in the Complaint, and has the authority and jurisdiction to enter this Consent Judgment pursuant to 28 U.S.C. 1331.

B.      This Court has personal jurisdiction over the parties and venue is proper.

C.      The parties have the authority to and have duly authorized the terms and conditions of the settlement on which this Consent Judgment is based.

D.      All conditions precedent to giving effect to the terms and conditions of this Consent Judgment are in compliance with all procedural and substantive requirements of State law.

E.      All claims in the pleadings, and any and all new claims that could be asserted as of this date relating to the specific subject matter of this case, are merged as part of this Consent Judgment, and, subject to the terms and conditions of this Consent Judgment, all claims are dismissed with prejudice and without attorney fees or costs.

F.      As set forth in the Complaint:

      (1)      Plaintiffs have alleged Moceri is a real estate developer which brought this action for itself and the future residents of its housing developments in Oakland Township.

2

(2)     Plaintiffs have alleged Buser is a disabled person, formerly a resident of Oakland Township.

(3)     Plaintiffs have alleged MPVA is an advocacy group for the disabled including disabled military veterans.

(4)     Plaintiffs have alleged by reason of the Township's housing and land use ordinances and regulations, and its application thereof to Plaintiffs and to others similarly situated, the Township has engaged in systematic discrimination against the elderly and disabled.

(5)     Plaintiffs have alleged the Township ordinances, policies and practices have had an unreasonable, unjustified and material unlawful adverse impact upon persons protected from discrimination under the Fair Housing Act, 42 U.S.C. 3601 et seq., and the Americans With Disabilities Act, 42 U.S.C. 12131 et seq.

(6)     Plaintiffs have alleged the Township has refused to afford Plaintiffs a reasonable accommodation excepting Plaintiffs from those Township ordinances which have the effect of excluding Plaintiffs from the opportunity to reside in the Township.

G.     The Township has denied certain of Plaintiffs' factual allegations and has contested Plaintiffs' legal conclusions.

H.     The parties (including Four Stars LLC) have agreed that the terms of this Consent Judgment represent a reasonable compromise of the parties' differences, are in the best interest of the public, and will make available housing opportunities for the elderly and disabled.

I.     The parties have agreed that the Township approves two parcels of land in Oakland Township to provide housing and other services to the elderly and disabled and to provide certain

neighborhood services.  One parcel is described on <u>Exhibit A</u> attached to this Consent Judgment and for convenience is referred to herein as "Blossom Ridge."  The other parcel is described on <u>Exhibit B</u> and is referred to herein for convenience as "Carillon Creek."

NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that:

1.      Plaintiff Moceri, its successors and assigns (collectively, the "Developer"), shall have the right to develop Blossom Ridge and Carillon Creek substantially in accordance with the terms of this Consent Judgment.

<div align="center">BLOSSOM RIDGE</div>

2.      Blossom Ridge may be developed as a mixed single and multi-family residential multi-building development for the elderly and disabled and may be constructed substantially as shown on the Site Plan prepared by Donald C. Westphal Associates, LLC, Project No. 737, Sheets SP0 – SP8 & SE1 – SE2, a copy of which is attached to this Consent Judgment as <u>Exhibit C</u> (the "Blossom Ridge Site Plan"), subject to the following specific inclusions and provisions.  The versions of the Site Plans attached hereto are diminished in size for convenient attachment.  The parties have initialed full architectural size drawings held by Moceri and by the Township.  The large-sized versions govern.  As used in this Consent Judgment, the phrase "substantially as shown in the Site Plan" or other similar phrases shall mean that while construction may vary in small ways due to topography, soils conditions, engineering constraints, or inadvertent good faith construction errors, the essential or fundamental design shall not change, and in no event shall there occur any increase in the number of units or the size or height of any buildings nor any reduction in the quality of materials shown in a Site Plan.  Building heights are measured to the midpoint of the horizontal top of the roof line.

(a)      No more than 189 residential dwelling units substantially as depicted on the Blossom Ridge Site Plan shall be constructed.

<div align="center">4</div>

(b)     The approved unit and building types are depicted on the Blossom Ridge Site Plan and consist of the following: (i) 100 residential units in a congregate building of two floors together with kitchens, dining areas, recreational and meeting rooms and other amenities as the Developer may determine, (ii) 21 residential units of 2 to 3 bedrooms, (iii) 20 residential duet units (two unit buildings) of 2 to 3 bedrooms each, (iv) 48 two bedroom ranch homes, (v) amenities, opens spaces, and parking as shown in the Blossom Ridge Site Plan.   None of the buildings will exceed two floors above ground.

(c)     The vehicular circulation, road patterns, and road widths shall be in substantial conformance with the Blossom Ridge Site Plan.

(d)     The minimum set backs and building dimensions shall be substantially as set forth on the Blossom Ridge Site Plan.

(e)     The landscaping shall conform substantially to the Landscape Plan shown on the Blossom Ridge Site Plan, including the landscaping around the trails and boardwalk regardless of whether owned by the Township or Developer.   The Township shall accept the Developer's installation and maintenance of the said Landscape Plan as and in lieu of compliance with the Township's Tree Ordinance and the Township's ordinances and policies regarding wetlands and woodlands; provided, Developer shall comply with all County, State and Federal wetlands laws and regulations.  As used in this Consent Judgement, the term "County" shall mean Oakland County and its agencies, including the Water Resource Commission and Road Commission.

(f)     Building elevations shall substantially conform to the building elevations shown on the Blossom Ridge Site Plan and shall generally adhere to the kind and quality of exterior building materials as depicted in Exhibit F attached hereto or as may be substantially equivalent thereto.

5

(g)     The Township shall not impose any "off site" improvement costs on Developer for Blossom Ridge arising out of the construction or use of the development. The Developer shall comply with and be responsible for all costs of any improvement requirements imposed by the County or the State of Michigan.

3.     This Consent Judgment shall be deemed to grant approval for development and construction of Blossom Ridge substantially as shown on the Blossom Ridge Site Plan, subject to final approval of engineering, and fire code compliance (2012 NFPA-1, as amended). All review and approval shall be conducted and given administratively by the Township Manager in consultation with the Township's outside engineering and planning consultants and/or Township staff as appropriate. The Township shall retain a person who as of the date of this Consent Judgment is a principal of the PEA engineering firm as its engineering consultant. If a PEA principal is unavailable or unwilling to serve, then the Township and Developer shall choose another engineer approved by both, and such approvals shall not be unreasonably withheld. If further planning review becomes needed, the Township shall retain its current planning firm or in-house planner. The review shall be conducted promptly and in a reasonable manner consistent with the consultant's and Township's staffs' professional standards to give effect to the material provisions of this Consent Judgment. The Township shall not unreasonably deny, delay or condition its reviews, responses and approvals.

4.     The following specific provisions shall apply to Blossom Ridge:

(i)     The Township shall not unreasonably delay in submitting applications required to be submitted by the Township to the State of Michigan and/or the County for water, sewer, sedimentation control or other approvals where Township submissions are required. It is understood herein that this Consent Judgment nor the approval of same by the Township will in any way

6

waive or act as an approval of any County, State or Federal requirement. Furthermore, when asked or required to provide a review or report on either of the proposed developments, the Township, or any of its consultants or representatives, is free to provide its or their professional review or opinions without concern for the effect same shall have on the approvals contemplated by this Consent Judgment.

(ii)    Developer shall have the right to install a dry hydrant in its storm water detention pond as shown in the Blossom Ridge Site Plan to meet fire emergency needs during peak hours.  The design of the dry hydrant and water lines shall be subject to engineering and Township Fire Department review and approval.  Developer is required to meet the applicable fire emergency standards as set forth in the 2012 NFPA-1, as amended.

(iii)    The Township is agreeable to the Developer obtaining an emergency water supply and fire hydrant permit from the City of Rochester Hills.  The Township shall sign and deliver any needed application or consent.  No third party costs shall be imposed on the Township.  For purposes of this application, the term "costs" shall not include the cost of wages, benefits and overhead of Township employees.

(iv)    The Township shall not impose site specific water pressure or storage requirements upon Blossom Ridge nor any water moratorium which would otherwise bar construction and occupancy of the Blossom Ridge buildings, subject to the following:

        A.    Blossom Ridge shall be subject to assessments or increased usage fees for future water system improvement costs on the same basis as

7

may be applicable to other properties served by the interconnected Southwest Water System District in Oakland Township. The Township does not herein waive any site specific water pressure or storage requirement imposed by any other governmental entity; including, but not limited to, any such requirement imposed by the County, State or Federal government.

B.     Notwithstanding the foregoing, on the following conditions, Developer shall make an advance payment for upgrading and adding storage for the water pressure in the Southwest Water District system.  If the Township has approved and is actively and substantially engaged in a water pressure upgrade project for the Southwest Water District and has determined the amount of storage to be added to the system, the hard costs of the project will be reasonably estimated by the parties or determined based on bids received or hard costs actually incurred.  Developer will pay a share of the hard costs up to but not exceeding $2.50 per gallon.  Developer's share will be determined based on a formula where the estimated hard costs are multiplied by a fraction, the numerator of which is the number of residential equivalent units ("REUs") used or likely to be used by Blossom Ridge and Carillon Creek, and the denominator of which will be all the REUs used or likely to be used in the entire Southwest Water District, including Blossom Ridge and Carillon Creek.   For purposes of determining Developer's share under the above formula, "hard costs" means the cost of installing or constructing a water tank, water tank building, site improvements, piping, pumps, other ancillary equipment and testing.  Hard costs do not include engineering, interest or other financing costs, or legal

8

fees.  Hard costs do not include water quality improvements.  Developer will pay Developer's share at such time as Developer has received water main extension installation permits for Blossom Ridge or Carillon Creek, whichever occurs first, and at that time Developer shall pay the share applicable to both Blossom Ridge and Carillon Creek.  If a special assessment district ("SAD") is established for water pressure improvements, Developer's advance payment will be applied in reduction of Developer's SAD obligation. Developer shall not be exempt from payment of water bills or receive any credit by reason of the advance payment.

(v)    The Township shall waive the sanitary sewer connection or tap fees otherwise applicable to Blossom Ridge to the extent of the Township's share of such fees.  The portion of such fees payable to the County shall not be waived.

(vi)    The County approved and dedicated drains (Chapter 18 drains) shall not be required.   The storm water management system will be owned and maintained by the Developer, owner and/or property owners association, and shall be administered, maintained, operated, and repaired in the manner provided by requirements of the Township Engineer.  Easements shall be reserved and granted for the benefit of Developer, its successors and assigns, and the Township.  Developer shall employ Best Management Practices, designs and methods in order to comply with State and County regulations for storm water discharge.  To the extent the Developer or its assigns fails to maintain, repair or construct an acceptable storm water system, the

9

Township reserves the right to impose any and all costs necessary to protect the health and safety of its citizens and the environment.

(vii)     Private internal roads in Blossom Ridge shall meet the pavement width specifications shown on the Site Plan. The roads' cross-sections shall meet County standards as to depth, materials, and layering of materials.

(viii)    The Township shall not impose any off site improvement costs on Developer for the construction or use of Blossom Ridge. The Developer shall comply with any off site improvement requirements imposed by the County or the State of Michigan. The foregoing shall not relieve Developer of the cost of bringing water or sewer lines to Blossom Ridge from the nearest mains, as shown in the Blossom Ridge site plan.

5.     To the extent the Blossom Ridge Site Plan conflicts with any ordinances of the Township, if clear and unequivocal on the face of the Blossom Ridge Site Plan, the Blossom Ridge Site Plan shall prevail except as expressly provided herein. Except as shown in the Blossom Ridge Site Plan and otherwise stated herein, Developer's design and construction shall conform to the Township's ordinances as such ordinances exist as of the date hereof. Except as expressly provided herein, Developer and Blossom Ridge and Carillon Creek shall be subject to evolving and changing engineering standards and changes in health and safety regulations of general application. Nothing contained herein shall release Developer from its obligation to comply with all laws and regulations of the County, State or Federal governments or their respective agencies.

6.     The development of Blossom Ridge may proceed in phases subject to Township Manager's reasonable approval. The Site Plan approval granted herein shall expire two years after entry of this Consent Judgment; however, one year extensions shall not be unreasonably withheld.

10

The Blossom Ridge Site Plan approval shall not expire as aforesaid if construction has commenced or the parkland donations described in Section 7 have occurred.

7.      Blossom Ridge contains parkland areas as shown on the Blossom Ridge Site Plan for the recreation of the Blossom Ridge residents and their invitees as the Developer shall determine. Within two years and not later than the issuance of the first building permits for construction of Blossom Ridge, Developer may elect to establish and grant to the Township an easement over those areas designating such areas as a public park which shall be reserved in perpetuity for the use of the Township's residents.  The grant may limit use of the park to passive recreation, barring use for ball playing.  If Developer so elects, the Township shall accept the easement and shall execute such reasonable acknowledgement of the gift as Developer may request. Notwithstanding whether the parklands areas are privately held or publically dedicated, Developer and Developer's successors, assigns and transferees, shall be obligated to maintain the park and other open areas in a good and orderly manner consistent with Township ordinances of general applicability and shall maintain liability insurance in the amount of $2,000,000 per occurrence against injury to persons or properties within the parklands naming the Township as an additional insured and providing thirty days notice to the Township prior to cancellation of the policy.

8.      The Developer may elect to deed to the Township the safety path areas shown in the Blossom Ridge Site Plan of approximately four acres.   If the Developer so elects, the Township shall accept the deed and public dedication of such lands, shall execute such reasonable acknowledgements of the gift as the Developer may request, and the Township shall install at the Township's cost the walking trails and boardwalks shown on the Site Plan in accordance with the Township's generally applicable requirements and practices.  The walking trail and boardwalks shall be installed by the time of Developer's substantial completion of construction of Blossom Ridge, except that the boardwalk and safety path west of of Blossom Ridge's Dutton Road entrance will be

11

installed only when it will no longer dead end at the west of Blossom Ridge.    The deed shall limit the use of the deeded land to that of a safety path and boardwalk and shall prohibit sale or transfer by the Township. The Developer or its assignee shall install, irrigate and maintain the grass and landscaping on either side of the safety path.

9.      Developer will promptly reimburse the Township for the Township's outside engineering and other consultant fees in accordance with Township policy of general application, excluding the Township's legal fees and excluding the Township's 25% administrative fee and any other fees for the services of the Township's employees.

10.     Developer shall have the right to install a temporary mobile construction office and a mobile sales/leasing office.  Each office may be maintained until the development and construction process is completed.  Developer may open residential units to the public for temporary use as models and/or a sales office prior to completion of the roads and installation of utilities.  Developer shall not be required to obtain Planning Commission, Township Board or Zoning Board of Appeals or other Township approval prior to the installation.  The appearance and location of all mobile offices shall be subject to administrative review and approval by the Township Building Department and Township Manager in accordance with its standard practices.

11.     Developer shall not permit surface oil or gas drilling or exploration to be done upon Blossom Ridge.  Developer shall not permit any cellular communications towers to be built on Blossom Ridge.

12.     If Blossom Ridge is subdivided or made a condominium, the Developer, its assigns, Homeowner's Association or other successor in interest shall put in place the appropriate documentation and agreements to account for the continued maintenance, repair and operation of all common areas, roads, utilities, fire hydrants and other property or assets approved herein.

12

13.     In the event that any substantial construction has ceased after the beginning of construction for a period of twelve (12) months or longer, the Township reserves the right to force the completion of construction of any portion of the development which represents an unsafe or unhealthy threat or impact to the community or any natural resource. Upon the Township notifying the Developer and providing 30 days to correct the unsafe or hazardous condition, the Township reserves the right to halt any further construction, including the halting of commencement of other construction hereunder so long as the unsafe or unhealthy condition continues, or otherwise take action to correct the unsafe condition at the Developer's expense; including, incurring the cost necessary to correct the situation, entering on to Developer's property and seeking reimbursement thereafter.

<center>CARILLON CREEK</center>

14.     Carillon Creek is currently zoned R/L (Research Laboratory) and the following is a less intensive use than the uses permitted under such zoning. Carillon Creek may be developed in three interconnected developments consisting of a commercial neighborhood services parcel, a multi-family residential parcel and a health and wellness facility parcel, which includes assisted living, dementia care, rehabilitation and/or other services to the disabled which may be constructed substantially as shown on the Site Plan prepared by Giffels Webster, Project No. 18770.00, Sheets 1 – 13, a copy of which is attached to this Consent Judgment as Exhibit D (the "Carillon Creek Site Plan"), subject to the following specific inclusions and limitations. The versions of the Site Plans attached hereto are diminished in size for convenient attachment. The parties have initialed full architectural size drawings held by Moceri and by the Township. The large-sized versions govern.

(a)     The commercial neighborhood services parcel shall contain a building which shall not exceed 6,800 square feet and shall initially include a dine-in restaurant, which may include carry out services. The Carillon Creek Site Plan, Exhibit D, includes an alternative drive through

<center>13</center>

area for the commercial neighborhood services, however, the Developer agrees that the initial design and construction will not include a drive through, but rather, additional parking will be added in lieu of the covered porta cachet. If the building's future use demonstrates a need for a drive up service window, except as provided herein, the Township will not unreasonably withhold any subsequent request or permit application for a drive through design and construction. However, the commercial neighborhood services building shall not be used for a fast food restaurant, pharmacy/drug store, gas service station, convenience store (e.g., 7-Eleven), discount variety store (e.g., Dollar Store), tattoo parlor, or a store the principal business of which is selling tobacco products, or other use not otherwise permitted notwithstanding whether such uses are permitted in the Township's neighborhood services zoning district. The development shall include a minimum of 109 parking spaces on site. The commercial neighborhood services parcel shall be serviced by 13 additional parking spaces to be built on the property of the adjacent Oakland Christian Church (the "Church") and by 46 shared spaces on the Church parking lot. The building shall be no more than one floor above ground and not more than 35' high.

(b)     The health and wellness facility shall contain not more than 56 residential units plus kitchen and dining areas, and rooms in which services to the disabled may be performed. The health and wellness parcel will be served by 60 parking spaces including those shared with the Church. The building shall be no more than one floor above ground and not more than 35' high.

(c)     The multi-family parcel shall contain 84 residential units and shall include two 12 unit buildings, eight 6 unit buildings and three 4 unit buildings. All buildings shall be no more than two floors above ground and not more than 35' high. The multi-family parcel shall be served by 306 new parking spaces, including the spaces contained within the buildings.

(d)    The vehicular circulation, road patterns, and road widths shall be in substantial conformance with the Carillon Creek Site Plan and shall comply with fire code geometrics and turning radius of general applicability.

(e)    The minimum set backs and building dimensions shall be substantially as set forth on the Carillon Creek Site Plan.  That is, for the multi-family buildings: 20 feet between four-plex buildings, 30 feet between six-plex buildings, 21 feet from front of buildings to curb, 21 feet from property line.  In the event ownership of the multi-family buildings are separated in ownership by the establishment of a condominium, the property line shall be deemed to be the exterior boundary of the condominium complex as a whole.  De minimus variations shall be disregarded.

(f)    The landscaping shall conform substantially to the Landscape Plan shown on the Carillon Creek Site Plan.   The Township shall accept the Developer's installation and maintenance of the said Landscape Plan as and in lieu of compliance with the Township's Tree Ordinance and the Township's ordinances and policies regarding wetlands and woodlands; provided, Developer shall comply with all County, State and Federal wetlands laws and regulations.

(g)    Building elevations shall substantially conform to the building elevations shown on the Carillon Creek Site Plan and shall generally adhere to the kind and quality of exterior building materials as depicted in Exhibit F or as may be substantially equivalent.

15.    This Consent Judgment shall be deemed to grant approval for development and construction of Carillon Creek substantially as shown on the Carillon Creek Site Plan, subject to final approval of engineering, building architectural plans, and fire code compliance (2012 NFPA-1, as amended).   All review and approval shall be conducted and given administratively by the Township Manager in consultation with the Township's outside engineering and planning consultants and/or staff as appropriate.   The Township shall retain a person who as of the date of this Consent Judgment is a principal of PEA engineering firm as its engineering consultant.   If

15

further planning review becomes needed, the Township shall retain its current planning firm or in-house planner. If a PEA principal is unavailable or unwilling to serve, then the Township and Developer shall choose another engineer approved by both, and such approvals shall not be unreasonably withheld. The review shall be conducted promptly and in a reasonable manner consistent with the consultant's professional standards to give effect to the material provisions of this Consent Judgment. The Township shall not unreasonably deny, delay or condition its reviews, responses and approvals.

16.  The following specific provisions shall apply to Carillon Creek:

(i)  The Township shall not unreasonably delay in submitting applications required to be submitted by the Township to the State of Michigan and/or the County for water, sewer, sedimentation control or other approvals where Township submissions are required.

(ii)  The Township shall not impose site specific water pressure or storage requirements upon Carillon Creek nor any water moratorium which would otherwise bar construction and occupancy of the Carillon Creek buildings. Carillon Creek shall be subject to assessments or increased usage fees for future water system improvement costs on the same basis as may be applicable to other properties in the Southwest Water System District in Oakland Township. The Township shall sign and deliver any needed application and/or engineering review. No third party costs shall be imposed upon the Township. The foregoing is subject to the terms set forth in Section 4(iv)B above.

(iii)  The County approved and dedicated drains (Chapter 18 drains) shall not be required. The storm water management system will be owned and

16

maintained by the Developer, owner and/or property owners association, and shall be administered, maintained, operated, and repaired in the manner provided by requirements of the Township Engineer. Easements shall be reserved and granted for the benefit of Developer, its successors and assigns, and the Township. Developer shall employ Best Management Practices, designs and methods in order to comply with State and County regulations for storm water discharge.

(iv)     Private internal roads in Carillon Creek shall meet the pavement width specifications shown on the Site Plan. The roads' cross-sections shall meet County standards as to depth, materials, and layering of materials.

(v)      The Township shall not impose any off site improvement costs on Developer for Carillon Creek. The Developer shall comply with any off site improvement requirements imposed by the County or State of Michigan. The foregoing shall not relieve the Developer of the cost of bringing water or sewer lines to Carillon Creek from the nearest mains, as shown in the Carillon Creek site plan.

(vi)     A storm water detention pond may be included in the road cul-de-sac shown on the Carillon Creek Site Plan.

(vii)    The provision for emergency access to Carillon Creek across the Church property controlled by means of a gate and lock box is approved.

17.     To the extent the Carillon Creek Site Plan conflicts with any ordinances of the Township, if clear and unequivocal on the face of the Site Plan, the Carillon Creek Site Plan shall prevail except as expressly provided herein. Except as shown in the Carillon Creek Site Plan and otherwise stated herein, Developer's design and construction shall conform to the Township's

ordinances as such ordinances exist as of the date hereof. Nothing contained herein shall release Developer from its obligation to comply with all laws and regulations of the County, State or Federal governments or their respective agencies.

18.    The development of Carillon Creek may proceed in phases subject to Township Building Department reasonable approval. The Site Plan approval granted herein shall expire two years after entry of this Consent Judgment, however, one year extensions shall not be unreasonably withheld. The Carillon Creek Site Plan approval shall not expire as aforesaid if the donations described in Section 19 and 22 are tendered by the Developer within the same two year period. During the pendency of the Consent Judgment, the Developer will not object to waiving the normal processes of rezoning and the Township Board shall have authority to amend the underlying zoning from RL to RM as to the multi-family component, to O1 as to the health and wellness center component, and to B2 as to the neighborhood services component of Carillon Creek.   Upon donation of the Carillon Creek parklands, the Developer shall be deemed to have constructed Carillon Creek for the purposes of this paragraph.

19.    Carillon Creek contains parkland areas including walking paths and boardwalks as shown on the Carillon Creek Site Plan for the passive or active recreation of the Carillon Creek residents and their invitees as the Developer shall determine.   Developer may elect to donate by deed such parklands to the Township for use and only for use as a public park which shall be reserved in perpetuity for the use of the Township's residents. If Developer so elects, the Township shall accept the donation and shall execute such reasonable acknowledgement of the gift as Developer may request. The donation of property for an Advanced Life Support ("ALS") vehicle garage as depicted on the Site Plan shall take the form of a nineteen (19) year lease to the Township at a rent of $1.00 giving the Township a right to extend four (4) times for consecutive periods of twenty (20) years each at a rent of $1.00 for each period. The donation may limit use of the land to

18

housing an emergency medical services vehicle and related office and equipment storage uses ("ALS Housing"). Land shown on the Carillon Creek Site Plan may be reduced so that storm water detention facilities are not included in the donated parklands. If the parklands are donated to the Township, the Township shall provide landscaping in accordance with Township customary practices, and the Township shall maintain the park, paths and boardwalks and other open areas in a good and orderly manner consistent with Township ordinances of general applicability. Developer may reserve easements for water, sanitary sewer, storm sewer and other public and private utilities across the park areas, however, said easements shall, to the extent possible, not interfere with the Township's use of the parklands. The ALS Housing shall be located as shown on the Site Plan, west and adjacent to the health and wellness building.

20.     Developer will promptly reimburse the Township for the Township's outside engineering and other consultant fees in accordance with Township policy of general application, excluding the Township's legal fees and excluding the Township's 25% administrative fee and any other fees for the services of the Township's employees.

21.     Developer shall have the right to install a temporary mobile construction office and a mobile sales/leasing office. Each office may be maintained until the development and construction process is completed. Developer may open residential units to the public for temporary use as models and/or a sales office prior to completion of the roads and installation of utilities. Developer shall not be required to obtain Planning Commission, Township Board or Zoning Board of Appeals or other Township approval prior to the installation. The appearance and location of all mobile offices shall be subject to administrative review and approval by the Township Building Department in accordance with its standard practices.

22.     Developer may elect to donate land for housing an EMS emergency patient transport vehicle in a location indicated on the Carillon Creek Site Plan. If Developer elects to donate the

land, Developer will also build an EMS substation. The EMS substation will consist of a 35 x 35 foot open span shell and concrete floor. The exterior architecture and location of the EMS substation shall be as shown on the Carillon Creek Site Plan. Water, sanitary sewer and other utilities will be brought to the EMS substation. At its option, the Township may install and pay for plumbing the building and for other interior improvements. Moceri may further elect to donate up to $200,000 for the purchase of an equipped patient transport vehicle. The donation may be conditioned upon the Township's agreement to house the patient transport vehicle on or within one-half mile of Carillon Creek or Blossom Ridge, or, the Township property at Adams and Orion Road. The Township may reject the vehicle donation. If the Township rejects the vehicle donation or does not take occupancy of the ALS Housing with a fully equipped ALS vehicle within twelve months after the Developer's completion of construction of the ALS Housing, the lease of the land and ALS Housing described in Section 19 above shall be null and void, and Developer may use the ALS Housing for storage and other purposes appurtenant to the health and wellness building. However, after one year, the Township is free to house the ALS vehicle at any location of its choosing, in which case the above building lease will terminate.

23.     The Township acknowledges that pursuant to an agreement between the Township and Moceri, or an affiliate of Moceri, 228 Residential Equivalent Sewer Connection Units ("Tap Units") have been allocated to Blossom Ridge. Tap Units represent a share in the Township's capacity to provide sanitary sewer treatment service to property owners within Oakland Township. Tap Unit absorption is governed by the County sewer connection allocation schedule attached hereto as Exhibit E ("County Schedule"). Applying the County Schedule, Blossom Ridge will absorb a number of Tap Units determined with reference to the County Schedule. The remainder of Moceri's 228 Tap Units is hereby transferred to Carillon Creek. Carillon Creek will absorb a number of Tap Units determined with reference to the County Schedule. Moceri will retain the

rights to the remaining unused Tap Units. Moceri may transfer such Tap Units for use on other lands located within the same sewer district as Blossom Ridge and Carillon Creek upon approval of the Township, which approval shall not be unreasonably withheld.

24. Developer shall not permit surface oil or gas drilling or exploration to be done upon Carillon Creek. Developer shall not permit any cellular communications towers to be built on Carillon Creek.

25. If Carillon Creek is subdivided or made a condominium, the Developer, its assigns, Homeowner's Association or other successor in interest shall put in place the appropriate documentation and agreements to account for the continued maintenance, repair and operation of all common areas, roads, utilities, fire hydrants and other property or assets approved herein.

26. In the event that any substantial construction has ceased after the beginning of construction for a period of twelve (12) months or longer, the Township reserves the right to force the completion of construction of any portion of the development which represents an unsafe or unhealthy threat or impact to the community or any natural resource. Upon the Township notifying the Developer and providing 30 days to correct the unsafe or hazardous condition, the Township reserves the right to halt any further construction, including the halting of commencement of other construction hereunder so long as the unsafe or unhealthy condition continues, or otherwise take action to correct the unsafe condition at the Developer's expense; including, incurring the cost necessary to correct the situation, entering on to Developer's property and seeking reimbursement thereafter.

## SPECIAL PROVISIONS FOR DISABLED VETERANS

27. Within thirty days after entry of this Consent Judgment, MPVA shall establish a fund for the purpose of assisting disabled U.S. military veterans to pay rent in Blossom Ridge or in Carillon Creek as follows:

A person who applies for residence in Blossom Ridge may be referred to MPVA or its designated administrator. If such applicant provides satisfactory evidence that such resident is (i) disabled within the meaning of the Americans with Disabilities Act of 1991 or the Fair Housing Act of 1988, as amended, (ii) is an honorably discharged veteran of the United States armed forces, and (iii) has an annual income less than 80% of the median annual income of residents of the Oakland County Metropolitan Statistical Area, Male, Female or Family as applicable, then such a person shall be given a rent subsidy from the MPVA fund which shall be provided in the form of a voucher to be presented to the owner and operator of Blossom Ridge or Carillon Creek. The fund may be used to pay expenses of the MPVA relating to the administration of funds, communications to its members regarding the availability of the rent subsidies, and the furnishing of the vouchers.

28.     In the event a resident or prospective resident who is otherwise qualified to reside in Blossom Ridge or Carillon Creek presents a rent voucher from the MPVA fund administrator, and if the MPVA administrator pays the amount represented by its voucher to Developer, Developer shall match the MPVA voucher with another voucher of equal value, and the rent payable by the resident or prospective resident shall be reduced by the amount of the two vouchers in the aggregate. Developer's total obligation under this paragraph shall be limited to $400,000.

29.     If Developer has donated the designated parklands of Carillon Creek to the Township, and if Developer elects to offer an additional donation of $125,000 to the Township for construction of a military veterans' memorial park and a monument, the Township shall use its best efforts to establish a 501(c)(3) non-profit corporation for the purpose of funding, designing, constructing and maintaining a veterans memorial. If the donations raised by the 501(c)(3) reach $125,000 or any portion thereof, Developer shall match the amount raised up to $125,000, and the

aggregate money raised shall be used to erect a military veterans' memorial. Moceri may condition Moceri's donation upon (i) MPVA and Moceri each having a board seat on the board of the 501(c)(3), and (ii) the locating of the memorial on the land donated by Developer , and (iii) the final design of the memorial shall be subject to approval by Moceri and by the Township. The parties shall act reasonably and in good faith agree upon the design for the memorial.

<div align="center">PROCEDURAL PROVISIONS</div>

30.     The Blossom Ridge Site Plan, the Carillon Creek Site Plan, and the authorization for the development of the Blossom Ridge and Carillon Creek as provided herein, shall remain valid until further order of the Court.

31.     Should Developer deem it necessary to propose modifications to the Blossom Ridge and/or the Carillon Creek Site Plan, excluding a modification to increase the number of dwelling units, or increase the floor area of multi-family, commercial, or wellness center buildings, but including any change reasonably required by the Township fire chief, engineering and planning consultant, or a State or County governmental agency, such modification shall be proposed to the Township Manager. The Township Manager in consultation with the Township fire chief, Building Department and outside engineering consultants, shall review such modification(s) administratively within a reasonable time, and shall not unreasonably withhold approval thereof if the proposed modification(s) give effect to the intentions of this Consent Judgment. Modifications requested by the Developer and approved by the Township Manager pursuant to this Paragraph do not require Court approval or a formal amendment to this Consent Judgment, however, either the Township or Developer may require the filing of a stipulation with the Court in this case describing and/or depicting the modification(s).

32.     In the event of any dispute arising hereunder, including a dispute concerning whether the Township, its agents and consultants are acting reasonably and in good faith in the

<div align="center">23</div>

granting, withholding or delaying approvals hereunder, such dispute shall be submitted for binding arbitration by former Oakland County Circuit Court Judge Barry Howard. If Barry Howard is unable to serve, the parties by mutual agreement may select an alternate arbitrator, and if unable to agree, they shall seek appointment of an arbitrator by the American Arbitration Association. In determining the reasonableness of the parties' respective positions, the arbitrator shall deem the parties as private parties to a contract and shall not afford the Township the deference normally afforded legislative or administrative acts by the courts. The arbitrator shall have the right to retain experts to assist him. The arbitrator's fees shall be paid half by Developer and half by the Township.

33.     Promptly following entry of this Consent Judgment, the parties through their respective counsel shall stipulate to dismissal with prejudice and without costs of that certain lawsuit pending in Oakland County, Michigan, entitled Moceri/DM Investments L.L.C., et al. v. The Charter Township of Oakland, Michigan, Oakland County Circuit Court Case No. 2015-148246-CZ.

34.     Other provisions:

(a)     The parties shall act reasonably and in good faith toward the implementation of this Consent Judgment.

(b)     Subject to its terms, this Consent Judgment shall be appurtenant to the properties described herein, is binding upon and shall inure to the benefit of the parties hereto and their heirs, personal representatives, successors, assigns, and transferees, and shall run with the properties described herein as covenants running with the land.

(c)     Blossom Ridge and Carillon Creek and the components thereof shall be deemed conforming uses and not be subject to the limitations and disabilities of non-conforming uses under the Township's ordinances.

(d)     Certain claims have been resolved pursuant to a separate agreement involving payment by an entity not a party to this Consent Judgment. Those funds, consisting of $400,000, shall be paid within thirty days of entry of this Consent Judgment to MPVA.

35.     This Consent Judgment shall be recorded with the Oakland County Register of Deeds.

36.     A party is not liable and shall not suffer any loss of rights hereunder for failure timely to perform the party's obligations or exercise the party's rights hereunder if such failure is as a result of Acts of God (including fire, flood, earthquake, storm, hurricane or other natural disaster), war, invasion, acts of foreign enemies, hostilities (regardless of whether war is declared), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation, terrorist activities, nationalization, government sanction, blockage, economic recession, embargo, labor dispute, strike, lockout or interruption or failure of electricity or telephone service.

37.     Except as expressly provided herein, the terms of this Consent Judgment may be amended, changed or modified at any time, but only by written consent executed by the parties or their respective successors or assigns. No waiver of any provision of this Consent Judgment shall be valid unless in writing and signed by the party against whom the waiver is asserted. Plaintiffs' development of Blossom Ridge and Carillon Creek shall comply with all applicable Township ordinances unless such ordinances are in conflict with the terms of this Consent Judgment.

38.     All claims asserted in this lawsuit, including any claims for money damages, attorney fees and costs, are merged into this Consent Judgment and are forever barred.

39.     Upon request from time to time, each of the parties shall confirm to the other that this Consent Judgment remains in full force and effect, that no known defaults have occurred and are continuing hereunder (or describing such defaults, if any exist) and that any obligations to the confirming party have been performed if and to the extent such obligation has become due as of the

25

date of the confirmation.  Such confirmation shall be addressed to the requesting party and such party's title company and prospective purchaser, mortgagee, investor, lessee, or the like.

40.     In the event any provision of this Consent Judgment is found to be invalid and/or unenforceable by a court of law, such a determination shall relate only to that specific provision and shall not be interpreted as a finding of invalidity and/or unenforceability with respect to the remaining provisions of the Consent Judgment, it being the intent of the parties that the remainder of the Consent Judgment shall be in full force and effect.

41.     This Court retains continuing jurisdiction to assure compliance with the terms of this Consent Judgment.  By their execution of this Consent Judgment, the parties warrant that they have the authority to execute this Consent Judgment and bind their respective entities to its terms and conditions.

Dated: February 10, 2016                    s/Terrence G. Berg
                                            TERRENCE G. BERG
                                            UNITED STATES DISTRICT COURT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 10, 2016, by electronic means and/or ordinary mail.

                                            s/A. Chubb
                                            CASE MANAGER
                                            (810) 341-9764

26

The parties and their attorneys, stipulate to the entry of the foregoing Judgment.

PARTIES AND COUNSEL:

George A. Googasian (P14185)
THE GOOGASIAN FIRM, P.C.
Attorneys for Plaintiff MPVA

Gregory D. Hanley (P51204)
KICKHAM HANLEY PLLC
Attorneys for the Moceri Plaintiffs

Daniel J. Kelly (P41315)
GIARMARCO, MULLINS & HORTON, P.C.
Attorneys for Defendant

THE CHARTER TOWNSHIP OF OAKLAND, a
Michigan municipal corporation

By: _____
Terry R. Gonser
Its: Township Supervisor

By: _____
Karen Reilly
Its: Township Clerk

27

MOCERI/DM INVESTMENTS, LLC, a Michigan
limited liability company

By: MOCERI FAMILY LIVING TRUST u/a/d
January 15, 1997, as amended, being the sole
member and authorized signatory of
Moceri/DM Investments, LLC

By: _____
Dominic Moceri, Co-Trustee

and

By: _____
Frances M. Moceri, Co-Trustee


FOUR STARS, LLC, a Michigan limited liability
company

By: _____
Dominic Moceri, Managing Member

28

AFFECTED SUCCESSOR TITLE HOLDERS:

BLOSSOM RIDGE LLC, a Michigan limited liability company

By: _____

    Dominic J. Moceri

Its: Manager

MOCERI CREEKSIDE PROPERTIES, LLC, a Michigan limited liability company

By: _____

    Dominic J. Moceri

Its: Manager

JOAN M. BUSER

MICHIGAN PARALYZED VETERANS OF
AMERICA

By: _____Michael F Harris_____

Its: _____Government Relations_____

EXHIBIT A

BLOSSOM RIDGE LEGAL DESCRIPTION

PART OF THE SOUTHEAST 1/4 OF SECTION 31, T. 4 N., R. 11 E., OAKLAND TOWNSHIP, OAKLAND COUNTY, MICHIGAN MORE PARTICULARLY DESCRIBED AS: BEGINNING AT THE SOUTHEAST CORNER OF SAID SECTION 31 S. 89°27'34" W. 1319.21 FEET ALONG THE SOUTH LINE OF SAID SECTION 31 BEING ALSO THE CENTERLINE OF DUTTON ROAD (33 FT. WD., 1/2 WIDTH); THENCE N. 01°29'40" W. 1391.33 FEET MEASURED (N. 01°29'01" W. RECORD) PARTIALLY ALONG THE HILLS OF KINGS POINTE SUB. NO. 1 AS RECORDED IN LIBER 226, PAGES 10-16, OAKLAND COUNTY RECORDS AND THE HILLS OF KINGS POINTE SUB. NO. 2 AS RECORDED IN LIBER 235, PAGES 28-30, OAKLAND COUNTY RECORDS; THENCE N. 88°56'12" E. 1309.21 FEET ALONG THE SOUTH LINE OF PROPOSED KINGSRIDGE NO. 2 TO THE EAST LINE OF SAID SECTION 31; THENCE S. 01°53'48" E. 803.48 FEET ALONG SAID EAST SECTION LINE BEING ALSO THE CENTERLINE OF ADAMS ROAD (WIDTH VARIES); THENCE S. 88°06'12" W. 43.00 FEET; THENCE S. 01°53'48" E. 298.98 FEET; THENCE N. 89°27'39" E. 43.00 FEET TO SAID EAST SECTION LINE AND ADAMS ROAD CENTERLINE; THENCE S. 01°53'48" E. 300.00 FEET ALONG SAID EAST SECTION LINE AND ADAMS ROAD CENTERLINE TO THE POINT OF BEGINNING. CONTAINING 41.86 ACRES MORE OR LESS. SUBJECT TO EASEMENTS OF RECORD AND THE RIGHTS OF THE PUBLIC AND OF ANY GOVERNMENTAL UNIT IN ANY PART TAKEN, USED OR DEEDED FOR ADAMS ROAD AND DUTTON ROAD.

EXHIBIT B

## CARILLON CREEK LEGAL DESCRIPTION

T4N, R11E, SEC 31 PART OF NE 1/4 BEG AT PT DIST S 89-35-52 W 327.77 FT & S 00-24-08 E 60 FT FROM NE SEC COR, TH N 89-35-52 E 267.69 FT, TH S 00-19-27 E 1469.78 FT, TH S 84-47-10 W 103.25 FT, TH N 88-55-35 W 91.52 FT, TH N 68-51-52 W 82.37 FT, TH N 38-34-38 W 125.54 FT, TH S 82-25-02 W 175.63 FT, TH N 45-36-51 W 128.99 FT, TH N 82-24-45 W 56.14 FT, TH S 50-49-34 W 63.33 FT, TH S 34-02-16 W 102.78 FT, TH S 39-20-25 W 118.76 FT, TH S 59-01-08 W 199.21 FT, TH S 61-26-16 W 147.88 FT, TH S 51-47-26 W 61.80 FT, TH N 47-29-30 W 44.89 FT, TH N 00-33-40 W 1664.64 FT, TH N 89-35-52 E 493.66 FT, TH S 00-00-00 W 118.48 FT, TH S 88-39-21 W 128.09 FT, TH S 00-36-26 W 44.13 FT, TH N 89-30-57 W 100.11 FT, TH S 00-39-44 W 152.76 FT, TH S 89-20-32 E 100.34 FT, TH S 00-31-03 W 406.95 FT, TH S 44-25-48 E 251.56 FT, TH S 89-07-25 E 108.30 FT, TH N 54-44-17 E 97.79 FT, TH S 85-56-27 E 148.46 FT, TH N 44-35-52 E 28.59 FT, TH N 27-05-25 W 243.71 FT, TH N 72-21-23 E 40.97 FT, TH N 16-11-04 W 20.25 FT, TH N 72-05-30 E 81.41 FT, TH N 80-22-07 E 68.80 FT, TH N 68-24-32 E 65.22 FT, TH N 08-04-33 E 85.43 FT, TH N 45-56-17 W 67.49 FT, TH N 86-18-31 W 98.52 FT, TH N 24-48-22 E 67.60 FT, TH N 46-42-17 E 87.39 FT, TH N 00-24-08 W 275.47 FT TO BEG 30.30 A 11-26-14 FR 003

**EXHIBIT C**

BLOSSOM RIDGE SITE PLAN



# BLOSSOM RIDGE

## A PLANNED AGE IN PLACE RESIDENTIAL DEVELOPMENT

IN SECTION 31, T4N, R11E, OAKLAND TOWNSHIP,
OAKLAND COUNTY, MICHIGAN

**DEVELOPER:**
FOUR STARS LLC
DM INVESTMENTS LLC
(248) 340-9400
3005 UNIVERSITY DRIVE, AUBURN HILLS, MI 48326

**LANDSCAPE ARCHITECT:**
DONALD C. WESTPHAL ASSOCIATES L.L.C.
LANDSCAPE ARCHITECTS AND SITE PLANNERS
(248) 651-5518
71 N. LIVERNOIS, SUITE A, ROCHESTER HILLS, MI. 48307

**ENGINEER:**
ZEIMET WOZNIAK & ASSOCIATES
CIVIL ENGINEERS & LAND SURVEYORS
(248) 437-5099
55800 GRAND RIVER AVE., SUITE 100, NEW HUDSON, MI 48165

**ARCHITECT:**
SIEGAL/TUOMAALA ASSOCIATES
ARCHITECTS AND PLANNERS, INC.
(248) 352-0099
29200 NORTHWESTERN HWY., SUITE 160, SOUTHFIELD, MI 48034



LEGAL DESCRIPTION:

LOCATION MAP



SHEET INDEX:
SP-0   COVER SHEET
SP-1   COLOR SITE PLAN
SP-2   SITE PLAN
SP-3   SITE PLAN - PARK/OPEN SPACE OUTLINE
SP-4   BIKE PATH LANDSCAPE PLAN
SP-5   BLOSSOM PARK LANDSCAPE PLAN
SP-6   ENTRANCE LANDSCAPE PLAN & DETAILS
SP-7   SITE ELEMENTS
SP-1   SITE ELEMENTS
SE-1   SITE ENGINEERING UTILITY PLAN - SOUTH 1/2
SE-2   SITE ENGINEERING UTILITY PLAN - NORTH 1/2

donald c. westphal

SHEET NO.
SP-0

CONSENT AGREEMENT



BLOSSOM RIDGE

Consent Agreement

Dutton Rd
Hawthorn Hills Subdivision

Artist's Rendering
January 5, 2016
Sheet SP - 1 Color Site Plan

CONSENT AGREEMENT SITE PLAN

Typical Ranch Layout

Typical Duet Layout

Typical Cottage Layout

CONSENT AGREEMENT







BLOSSOM PARK LANDSCAPE PLAN



ENTRANCE LANDSCAPE PLAN
DETAILS & NOTES

SP-6





SITE ELEMENTS

SP-8

SITE ENGINEERING UTILITY PLAN—SOUTH 1/2

BLOSSOM RIDGE

C/L DUTTON ROAD (33 ft.-wd.) (1/2 WIDTH)

C/L ADAMS R (WIDTH VARI

INDEPENDENT AND ENHANCED

DETENTION

PRESSURE GAS LINE



**EXHIBIT D**

<u>CARILLON CREEK SITE PLAN</u>







CONSENT JUDGEMENT

REGIONAL DIMENTION PLAN
SHEET 3











CHARTRES

CONSENT JUDGEMENT

TYPICAL STUDIO LAYOUT



Stacked Ranch Floor Plans

CONSENT JUDGEMENT



POTENTIAL EMS SUB-STATION

CONSENT JUDGEMENT





CONSENT JUDGEMENT





NEIGHBORHOOD SERVICE

CONSENT JUDGEMENT

# EXHIBIT E

## OAKLAND COUNTY DRAIN COMMISSIONER
## SCHEDULE OF UNIT ASSIGNMENT FACTORS

[SEE FOLLOWING PAGES]

# OAKLAND COUNTY DRAIN COMMISSIONER

### Schedule of
### Unit Assignment Factors
### July 1, 1998

| Usage | Unit Factors | | Information Source |
|---|---|---|---|
| Single Family Residential | 1.0 | per dwelling | |
| Auto Dealers | .30 | per 1,000 sq. ft | D |
| Banquet Hall | .50 | per 1,000 sq. ft | D |
| Barber Shops | 1.0 | per 1,000 sq. ft | D |
| Bars | .044 | per seat | D |
| Beauty Shops | 0.223 | per booth | D |
| Boarding Houses | .16 | per person | A-C |
| Boarding Schools | .27 | per person | A-C |
| Bowling Alleys (no bars, lunch facilities) | .16 | per alley | D |
| Car Wash | | | |
|    a. Manual, Do-It Yourself | 2.5 | per stall | D |
|    b. Semi-Automatic (Mechanical without conveyor) | 12.5 | per stall | D |
|    c. Automatic with conveyor | 33.0 | per lane | D |
|    d. Automatic with conveyor conserving and (recycling water) | 8.4 | per lane | D |
| Churches | .008 | per seat | D |
| Cleaners (pickup only) | .048 | per employee | D |
| Cleaners (pressing facilities) | 1.25 | per press | D |
| Clinics | | | |
|    a. Medical | 1.00 | per doctor | D |
|    b. Dental | 1.40 | per dentist | D |
| Convalescent and/or Nursing Homes | .3 | per bed | D |
| Convents | .20 | per person | D |
| Country Clubs | .08 | per member | A-C |
| Drug Stores | | | |
|    a. With fountain service | .08 | per seat + .14 per 1,000 sq. ft. | D |
|    b. Without fountain service | .14 | per 1,000 sq. ft. | D |

| Usage | | Unit Factors | Information Source |
|---|---|---|---|
| Factories (exclusive of excessive industrial use) | .50 | per 1,000 sq. ft. | D |
| Fraternal Organizations (members only) | 1.0 | per hall | D |
| Fraternal Organization (members & rentals) | 2.0 | per hall | D |
| Funeral Homes, including one residence | 2.2 | per funeral home | D |
| Grocery Stores & Supermarkets | 0.31 | per 1,000 sq. ft. | D |
| Health Clubs | | | |
| a. With showers and/or pool | 2.3 | per 1,000 sq. ft. | D |
| b. Without showers and/or pool | .26 | per 1,000 sq. ft. | D |
| Hospitals | 1.22 | per bed | D |
| Hotels and/or Motels (exclusive of swimming pools, bars, restaurants, etc.) | .38 | per room | D |
| Laundry (self-service) | .54 | per washer | D |
| Mobile Home Parks | 0.60 | per mobile home | D |
| Multiple Family Residence | 0.60 | per residence | D |
| Office Building | .40 | per 1,000 sq. ft. | D |
| Public Institutions other than Hospitals | .32 | per employee | A-C |
| Racquet Clubs | .82 | per tennis or handball court | D |
| Restaurants | | | |
| a. Conventional type with or without drinks | 0.13 | per seat | A-B |
| b. Quick service franchise type, without dishes, dealing mainly in hamburgers with or without eating in building (includes but not necessarily limited to McDonald's, Burger Chef, Burger King, Red Barn and Hardees). | 5.6 | per restaurant | D |
| c. All other restaurants (includes but not necessarily limited to drive-ins, snack bars, carry outs, such as fried chicken and pizzas; could have some eating in building, all without dishes. | 1.8 | per restaurant | D |
| Rooming Houses (no meals) | .13 | per person | A-C |

| Usage | Unit Factors | | Information Source |
|---|---|---|---|
| Schools | | | |
|     a. Elementary | .012 | per student | D |
|     b. Junior or Middle High | .020 | per student | D |
|     c. Senior High | .038 | per student | D |
|     d. Bus Maintenance Facility | .165 | per 1,000 sq. ft. | D |
| Service Station | .24 | per pump | D |
| Store (other than specifically listed) | .16 | per employee. | D |
| Summer Camps | .14 | per housing unit | D |
| Swimming Pool (Single family residential excluded) | 3.00 | per 1,000 sq. ft. | D |
| Theaters (Drive-In) | .012 | per car space | D |
| Theaters (indoor) | .008 | per seat | D |
| Tourist Courts (individual bath units) | .27 | per cubical | A-B-C |
| Warehouses | .10 | per 1,000 sq. ft. | D |

A - Cincinnati Report
B - Gordon MacDougall Report
    to Wayne County

C - Manual of Septic Tank Practices Publication
    No. 526, U.S. Department of Health
D - Oakland County Dept. of Public Work Studies

Note: New Unit Factors are Underlined

JEP/kes/banquet.wk4

.

**EXHIBIT F**

<u>CARILLON CREEK BUILDING HEIGHT</u>

**[SEE FOLLOWING PAGES]**





